# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) Case No. 1:06CR00028<br>) |
| v. | ) **OPINION SETTING FORTH**<br>) **REASONS FOR SENTENCE** |
| MELISSA LONG, | )<br>) By: James P. Jones |
| Defendant. | ) Chief United States District Judge<br>) |

*Zachary T. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Brian M. Ely, Jessee, Read, & Ely, P.C., Abingdon, Virginia, for Defendant.*

The defendant Melissa Long was convicted by a jury of obstructing justice, 18 U.S.C.A. § 1512(c) (West 2000 & Supp. 2006) (Count One of the Superceding Indictment) and perjury, 18 U.S.C.A. 1623 (West 2000) (Counts Two, Three, and Five).[1] A sentencing hearing has been held, and this opinion sets forth the reasons for the sentence imposed.

The facts surrounding Long's criminal acts are set forth in a prior opinion of the court dealing with her post-verdict motions. *United States v. Long*, No. 1:06CR00028, 2007 WL 218592 (W.D. Va. Jan. 29, 2007). The defendant's

---

[1] Following the verdict, I vacated an additional perjury conviction (Count Four) on the ground that the charge was multiplicitous.

stepfather, Michael Bear, was under investigation for drug trafficking. While Bear was in custody, the authorities recorded telephone conversations between Bear and his stepdaughter as well as between Bear and Long's mother, Cheryl Garrison. In the conversations between Bear and Long, he asked her to contact an alleged hitman known only as "Keek," in order to perform "backhoe jobs," a code word for murder. In subsequent conversations, Long told Bear that she had been unable to reach Keek, although there is no other evidence that she actually knew Keek or ever attempted to contact him.

Bear and Long also discussed the objects of the murder plot, although using initials, rather than names.

Bear later attempted to hire fellow inmates to perform the murders. One of the inmates contacted the authorities, who thereby learned of the plot. In recorded conversations, Bear directed Long's mother in a method of payment for one of the supposed killers, although no money was actually paid.

Shortly after Bear was arrested, he had a bond hearing in this court, and at that hearing Long testified for her stepfather, falsely stating that Bear had never provided her with drugs. Her false testimony was the basis of one of the perjury charges against her in this case, Count Five.

Long was later called before the grand jury. She denied recalling any direction by Bear to contact Keek, but agreed that Bear had discussed at some unspecified time killing and burying people who "snitched" on him, which he called "backhoe jobs." (Grand Jury Tr. 15, 23.) Her testimony before the grand jury was the basis for the remaining perjury charges and the obstruction of justice charge (Counts One, Two, and Three.)

A week following the guilty verdict in this case, Long was indicted along with her mother in the murder-for-hire case then pending against her stepfather. She eventually entered into a "Sentencing Agreement" in this case and the companion case, by which she admitted that she had "willingly and actively participated in a conspiracy" to solicit the murder of certain witnesses. In return, the government agreed, so long as Bear and Garrison pleaded guilty, to dismiss Long as a defendant in the murder-for-hire case.[2]

The probation officer calculated Long's guideline range under the Sentencing Guidelines on the basis of guideline section 2X3.1, providing for a base offense level six levels lower than the underlying offense, but not more than 30. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2X3.1 (2006). The underlying offense was

---

[2] Garrison has been allowed by the government to plead guilty to one count of conspiracy, which has a maximum statutory punishment of 60 months.

- 3 -

determined to be that described in section 2A1.5, Conspiracy or Solicitation to Commit Murder, which provides a base offense level of 33, with an increase of four levels if the offense involved the offer of anything of a pecuniary value. U.S.S.G. § 2A1.5(b)(1).

For the reasons stated at the sentencing hearing, I found that Long had not been involved in Bear's offer of money, nor could it be considered relevant conduct as far as she was concerned. I thus determined that Long had a base offense level of 27, and a criminal history of I, resulting in a guideline range of 70 to 87 months.

While the Sentencing Guidelines are not mandatory, *United States v. Booker*, 543 U.S. 220, 226-27 (2005), I am obligated to "consult those Guidelines and take them into account," along with the sentencing goals set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004). *Booker,* 543 U.S. at 264. The Fourth Circuit has mandated the following process that a district court in this circuit must follow in order to comply with *Booker*:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law . . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose

> a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006) (alterations, internal quotation marks, and citations omitted).

Under § 3553(a), I must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a). The further a sentence "diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434. Nevertheless, "'a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'" *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

In this case, the relevant statutory factors convinced me to impose a sentence below the guideline range.

Long is 30 years old. She grew up in an unstable family, in which her father was abusive. She has been married three times, and is currently separated from her latest husband, who was also physically abusive to her. She has two children, ages eleven and seven. Since her mid-twenties, she has abused alcohol and drugs and blames her current conduct on her alcoholism. She has never received any substance abuse treatment, although she has been diagnosed with depression. She has a high school education, but no specialized training or skills. She most recently worked in a fast food restaurant.

Her only prior criminal conviction was for drunk driving in 2005, shortly after the events in question in this case. Police found her in her car in a Wal-Mart parking lot with the motor running and with children in the back seat. She had a blood alcohol content of .249 percent. Long reports that during this time she was drinking a fifth of vodka every two days.

The effective treatment of a defendant while incarcerated is a statutory consideration for the sentencing court, and I have recommended that the defendant receive residential substance abuse treatment while in prison, under the provisions of 18 U.S.C.A. § 3621(e) (West 2000). It is clear that the defendant's bad decisions here

were fueled by her dangerous alcohol and drug use. Since her arrest and release on bond in this case, the defendant has apparently not succumbed to her past ways, and this experience holds promise that with further treatment, she might remain drug and alcohol free.

Moreover, the nature and circumstances of the offenses here support a sentence below the guideline range. There is no evidence that Long did anything in support of the conspiracy other than testify falsely as she did. While the jury was justified in finding her guilty in light of her obvious attempt under oath before the grand jury to minimize her stepfather's involvement in the murder plot, she did in fact confirm the outlines of the scheme, even naming the potential victims. She lied at her stepfather's bond hearing, but in a way that likely had no practical effect on the outcome, in light of the presumption of detention in his case.

In summary, I find that a sentence within the applicable guideline range, even with a departure based on the guidelines, does not serve the factors set forth in 18 U.S.C.A. § 3553(a). A sentence of 36 months imprisonment serves those factors in that it is sufficient to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; and (C) protect the public from further crimes of the defendant. At the same time, such a sentence allows for adequate substance abuse treatment of

the defendant while she is incarcerated. The sentence also reflects the nature and circumstances of the offenses and the history and characteristics of the defendant, in particular her history of substance abuse, and relative culpability.

                                        DATED: March 14, 2007

                                        /s/ JAMES P. JONES
                                        Chief United States District Judge